RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0129P (6th Cir.)
File Name: 02a0129p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

DETROIT NEWSPAPER
AGENCY and DETROIT NEWS,
     *Plaintiffs-Appellees,*

     *v.*

NATIONAL LABOR
RELATIONS BOARD,
REGIONAL DIRECTOR and
NATIONAL LABOR
RELATIONS BOARD,
GENERAL COUNSEL,
     *Defendants-Appellants.*

No. 00-2109

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 99-73963—Robert H. Cleland, District Judge.

Argued: November 29, 2001

Decided and Filed: April 15, 2002

Before: MERRITT, CLAY, and GILMAN, Circuit Judges.

————————————

**COUNSEL**

**ARGUED:** Meredith A. Burns, NATIONAL LABOR RELATIONS BOARD, APPELLATE COURT BRANCH, Washington, D.C., for Appellants. Robert M. Vercruysse, VERCRUYSSE, METZ & MURRAY, Bingham Farms, Michigan, for Appellees. **ON BRIEF:** Meredith A. Burns, NATIONAL LABOR RELATIONS BOARD, APPELLATE COURT BRANCH, Eric G. Moskowitz, Margery E. Lieber, NATIONAL LABOR RELATIONS BOARD, SPECIAL LITIGATION BRANCH, Washington, D.C., for Appellants. Robert M. Vercruysse, William E. Altman, Gary S. Fealk, VERCRUYSSE, METZ & MURRAY, Bingham Farms, Michigan, for Appellees.

————————————

**OPINION**

————————————

CLAY, Circuit Judge.   Defendants, William Schaub, Regional Director of the National Labor Relations Board ("NLRB"), and Fred Feinstein, former General Counsel to the National Labor Relations Board (collectively "the Board" or Defendants), appeal from the district court's order granting Plaintiffs, the Detroit Newspaper Agency ("DNA") and the Detroit News, Inc. ("DN"), injunctive and declaratory relief, while denying Defendants' motion to dismiss. On appeal, Defendants seek reversal of the district court's order holding that it had subject matter jurisdiction to enjoin the Board's unfair labor practice proceeding under the exception to the general rule precluding district court jurisdiction over such proceedings as set forth in *Leedom v. Kyne*, 358 U.S. 184 (1958), as well as the district court's order enjoining the Board from prosecuting its complaint.

For the reasons set forth below we hold that the district court erred in exercising subject matter jurisdiction over this

case, and we therefore **VACATE** the district court's order enjoining the Board.

## BACKGROUND

### A.  The Board's Unfair Labor Practice Proceedings

This case arises out of the July 13, 1995 strike of the DNA and DN (collectively "the Employers") by six of the unions representing employees of these organizations.  The strike lasted until February of 1997, when the striking unions offered to return to work on behalf of their members.

During the nearly one and one-half year course of the strike, the Employers discharged numerous employees for misconduct.  On January 24, 1996, the unions filed the first of what would be several charges with the Board alleging that the Employers had discriminated against striking employees.  This first charge (7-CA-38079) alleged that the DNA unlawfully discharged a striking employee in violation of Section 7 of the National Labor Relations Act ("the Act"), 28 U.S.C. § 151 *et seq.*  The Board issued several administrative complaints based on the charges, and the complaints were consolidated into a single complaint ("the Consolidated Complaint"), and tried in a massive NLRB administrative hearing that ran intermittently from April 7, 1997, to September 23, 1998.  The unions and the General Counsel claimed that the Employers and the Detroit Free Press, Incorporated, committed unfair labor practices in violation of the Act by disciplining and/or discharging ninety-six individuals for misconduct ranging from assault and battery to willful destruction of private property.

While the administrative hearing was progressing, the unions filed additional charges (collectively "the Additional Charges") against the Employers alleging that they disparately treated the strikers. (Charges 7-CA-40759, 7-CA-40943, and 7-CA-40944).  Teamsters Locals 372 and 2040 filed charge number 7-CA-40759 on March 13, 1998; the Graphic Communications International Union, Local 13N filed charge

number 7-CA-40944 on May 6, 1998; and the Detroit Newspaper Guild, Local 22 filed charge number 7-CA-40943 on May 6, 1998, as well. In each additional charge, the conduct complained of occurred more than six months prior to the time of the filing of the additional charge – i.e., prior to March 13, 1998 and May 6, 1998.

On September 23, 1998, the final day of the administrative hearing that had lasted for approximately one and one-half years, the General Counsel made a verbal motion to amend the Consolidated Complaint to add unfair labor practice allegations regarding an additional seventy-seven discriminatees. The seventy-seven alleged discriminatees were presumably those listed in the Additional Charges. After hearing arguments on the motion to amend, Administrative Law Judge ("ALJ") Richard Scully held that "[b]ased on what I've heard I find that there is no good cause for allowing the amendment to the complaint at this point in the proceeding. So, the motion is denied." (J.A. at 196.)

On October 16, 1998, the General Counsel appealed the ALJ's decision to the Board. The General Counsel argued that pursuant to *Redd-I, Inc.*, 290 NLRB 1115 (1988), the allegations sought to be added were timely under the Section 10(b) statute of limitations because they were closely related to the allegations in the timely filed charges which served as the basis for the Consolidated Complaint. The Board issued an order on February 25, 1999, denying the Employers' request to appeal the ALJ's ruling. The order stated as follows:

On October 20, 1998, the General Counsel filed a request for special permission to appeal Administrative Law Judge Richard A. Scully's ruling denying the General Counsel's motion, filed on the last day of the hearing, seeking to amend the consolidated complaints in the above cases to include additional discriminatees and discharges. The judge denied the motion on the ground that "no good cause" had been shown for allowing the

**CONCLUSION**

The district court erred in finding that it had subject matter jurisdiction over this cause; as a result, we **VACATE** the district court's order and **REMAND** the case for proceedings in accordance herewith.

This well-steeped precedent from the Supreme Court is significant here inasmuch as the district court found that the fact that the Employers had a statutory right to judicial review in the court of appeals was of no moment because, according to the district court, "it is not enough that a court of appeals can eventually tell the Board that it acted outside its statutory authority; by then, the damage would be done." As noted above, the Supreme Court in *Myers* expressly rejected this type of reasoning. The fact remains that the Employers have an opportunity to raise their arguments in the court of appeals under § 160(f), and because of this fact, *Leedom* does not confer jurisdiction on the district court.

This brings us to the Board's argument that the district court erred in conferring jurisdiction upon itself under the factors set forth by this Court in *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981). Because we find that the district court erred in exercising jurisdiction under *Leedom*, we need not address this argument.

In summary, the first *Leedom* factor – whether the party would be "wholly deprived" of vindicating its statutory rights – is not met inasmuch as § 106(f) provides the Employers with a statutory basis for review, and the Employers have an opportunity for such review. The fact that the district court found otherwise on the basis that the Employers would suffer harm by having to litigate the matter is without foundation in the jurisprudence. *See Myers*, 303 U.S. at 51-52; *see also MCorp*, 502 U.S. at 43-44. As in *MCorp*, because judicial review is available in the court of appeals, we need not address whether the Board exceeded its authority inasmuch as it is clear that the Employers cannot meet both of *Leedom's* requirements for district court jurisdiction. *See MCorp,* 502 U.S. at 44.

amendment at that time. On November 2, 1998, the Respondent filed an opposition to the General Counsel's request to appeal.

Having duly considered the matter, we find that the General Counsel has failed to establish that the judge's ruling constituted an abuse of his discretion. Accordingly, we deny the request to appeal. In so ruling, we do not pass on the various other issues addressed by the General Counsel and/or the Respondent, including whether the additional allegations sought to be added are barred by Section 10(b) of the Act or whether the allegations could properly be pled and litigated separately.

(J.A. at 210.)

About nine months after the record in the case closed, on June 8, 1999, the General Counsel filed a motion with the ALJ which was similar in all respects to the General Counsel's motion to add the Additional Charges, except that it only sought to add allegations regarding fifty-nine of the seventy-seven new alleged discriminatees. The ALJ again denied the General Counsel's motion, stating:

I find the motion should be denied. I previously denied the motion to consolidate these and other allegations because I considered it untimely and that good cause had not been shown. The Board subsequently upheld that ruling in an Order dated February 25, 1999, and the record in this matter is closed.

(J.A. at 226.)

On July 19, 1999, the NLRB's Regional Director issued a separate Consolidated Complaint ("Second Complaint" or "July 1999 Complaint") against the Employers stating that "[t]he allegations of the charges and amended charges in Case Nos. 7-CA-40759, 7-CA-40943 and 7-CA-40944, are closely-related to the allegations of the pending, timely filed charges

in Case Nos. 7-CA-38079 et al. under *Redd-I, Inc.*, 290 NLRB 1115 (1988)." (J.A. at 228.) In other words, the previously coined Additional Charges now form the basis for the Second Complaint. The Second Complaint alleges that the Employers unlawfully discharged fifty-nine separate employees on dates ranging from June 26, 1995 to July 29, 1999; however, the Employers point out that the earliest filed charge upon which the Board based its complaint was March 13, 1998, that being case number 7-CA-40759, well before the six-month statutory limit.

**B.  The Employers Seek to Halt the Board's Consideration of the July 1999 Complaint**

On August 10, 1999, the Employers filed the instant complaint in the district court seeking declarative and injunctive relief to enjoin prosecution of the Second Complaint on the basis that the Second Complaint is based on conduct that occurred more than six months prior to the filing of the underlying charges in contravention of Section 10(b) of the Act. Also on August 10, 1999, the Employers filed a motion with the Board requesting dismissal of the General Counsel's Second Complaint. Thereafter, on August 31, 1999, the Board filed its opposition to the Employers' request for injunctive relief, as well as a motion to dismiss the Employers' complaint with the district court. The district court issued an order on September 9, 1999, holding the case in abeyance until such time that the Board reached a decision on the Employers' administrative motion to dismiss the Second Complaint.

The Board denied the Employers' motion to dismiss the Second Complaint on January 21, 2000, holding that the allegations in the Second Complaint were closely related to the underlying charges in the First Complaint. In so holding, the Board relied upon *Redd-I, Inc.*, 290 NLRB 1115, and *Nickles Bakery of Indiana*, 296 NLRB 927, 928 (1989), in support of its decision. The Board observed that under *Redd-I*, "the General Counsel may add complaint allegations that

respect thereto should be instituted, a complaint stating that charge is to be filed, and a hearing is to be held thereon upon notice to the person complained of.

*Id.* at 44 (internal quotation marks omitted). The Court then recognized that Congress had vested the power to prevent any person from engaging in unfair labor practice with the Board and the Circuit Court of Appeals inasmuch as "the act provided for appropriate procedure before the Board and in the review by the Circuit Court of Appeals an adequate opportunity to secure judicial protection against possible illegal action on the part of the Board." *Id.* at 48. The Court further opined as to the adequacy of the judicial review that,

[t]he order of the Board is subject to review by the designated court, and only when sustained by the court may the order be enforced. Upon that review all questions of the jurisdiction of the Board and the regularity of its proceedings, all questions of constitutional right or statutory authority are open to examination by the court. We construe the procedural provisions as affording adequate opportunity to secure judicial protection against arbitrary action in accordance with well-settled rules applicable to administrative agencies set up by Congress to aid in the enforcement of valid legislation.

*Id.* at 49 (internal quotation marks and citation omitted).

Significant to the matter at hand, the Court found that the exhaustion requirement of allowing the administrative body to rule in the first instance "cannot be circumvented by asserting that the charge on which the complaint rests is groundless and that the mere holding of the prescribed administrative hearing would result in irreparable damage." *Myers*, 303 U.S. at 51. The Court observed that "[l]awsuits also often prove to have been groundless, but no way has been discovered of relieving a defendant from the necessity of a trial to establish that fact." *Id.* at 51-52.

clear absence of statutory authority. *See Leedom*, 358 U.S. at 190; *see also MCorp*, 502 U.S. at 43.

The Board argues that like the company in *MCorp*, the Employers have an unquestioned statutory right to judicial review of the Board's interpretation and application of § 10(b) in the court of appeals pursuant to § 160(f). As a result, the Board maintains that the Employers have a "meaningful and adequate opportunity for judicial review" available to them such that the district court erred in exercising subject matter jurisdiction over the case pursuant to *Leedom*. We agree.

Long before the Supreme Court carved out the exception for allowing district court jurisdiction over a Board proceeding in *Leedom,* the Court reinforced the purpose of vesting jurisdiction over such matters with the courts of appeal upon issuance of a final order by the Board. Specifically, in *Myers v. Bethlehem Shipbuilding Corp*, 303 U.S. 41, 43 (1938), the Court considered the question of "whether a federal District Court has equity jurisdiction to enjoin the National Labor Relations Board from holding a hearing upon a complaint filed by it against an employer alleged to be engaged in unfair labor practices prohibited by National Labor Relations Act . . . ." In ultimately answering this question in the negative, the Court first noted that

"[t]he declared purpose of the National Labor Relations Act is to diminish the causes of labor disputes burdening and obstructing interstate and foreign commerce; and its provisions are applicable only to such commerce. In order to protect it, the act seeks to promote collective bargaining; confers upon employees engaged in such commerce the right to form, and join in, labor organizations; defines acts of an employer which shall be deemed unfair labor practice; and confers upon the Board certain limited powers with a view to preventing such practices. If a charge is made to the Board that a person has engaged in or is engaging in any unfair labor practice, and it appears that a proceeding in

would otherwise be barred from litigation by Section 10(b) of the Act if the allegations are closely related to allegations of a timely filed charge." (J.A. at 289.) The Board went on to find that the allegations of unlawful retaliation against certain strikers contained in the Second Complaint were closely related to the charges filed in the First Complaint inasmuch as the allegations shared a common legal theory of violation and similar factual circumstances. The Employers' assertion that the *Redd-I* principle did not apply because the new allegations were made in a Second Complaint was rejected by the Board. Instead, the Board found that there is no requirement that all unfair labor practice allegations arising during an unfair labor practice proceeding and concerning the same party be consolidated into one proceeding.

### C.  The District Court Issues a Final Order Enjoining the Board from Proceeding on the Second Complaint

After the Board issued its decision, the parties submitted Supplemental Memoranda to the district court. Thereafter, on August 2, 2000, the district court issued an order denying the Board's motion to dismiss and enjoining the Board from prosecuting any complaint based upon conduct that occurred more than six months prior to the filing of the charge with the Board. The district court held that it had subject matter jurisdiction over the matter pursuant to the narrow *Leedom v. Kyne*, 358 U.S. 184 (1958) exception to the rule precluding district court review of a Board proceeding. Specifically, the district court found that it had jurisdiction under *Leedom* because the Board had acted beyond its delegated statutory authority when it initiated a complaint based upon alleged conduct that occurred more than six months prior to the filing of the charge underlying the complaint. The district court also recognized the tripartite criteria established by this Court in *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083 (6th Cir. 1981), for determining whether the *Leedom* exception applied, but found it unnecessary to apply the criteria here.

Alternatively, the court held that it would have jurisdiction even if the *Shawnee* criteria applied.

Having found that it had subject matter jurisdiction, the district court enjoined the Board from prosecuting the Second Complaint on the basis that while § 10(b) may allow for the amendment of an existing complaint with allegations of "closely related" conduct that occurred more than six months prior to the charges, § 10(b) does not allow for the filing of a new complaint based upon such "closely related" conduct. The Board now appeals.

## DISCUSSION

We review a district court's decision to exercise subject matter jurisdiction over a case *de novo. See Joelson v. United States*, 86 F.3d 1413, 1416 (6th Cir. 1996).

### A. Background into the Law of Subject Matter Jurisdiction and Judicial Review of NLRB Decisions

Section 160(f) of the Act provides that "[a]ny person aggrieved by a final order of the Board granting or denying in whole or in part the relief sought may obtain a review of such order in any United States court of appeals in the circuit wherein the unfair labor practice in question was alleged to have been engaged in . . . ." 29 U.S.C. § 160(f). This provision of providing exclusive jurisdiction in the court of appeals over final orders from the Board has been characterized as an exhaustion rule based upon the well established axiom that parties must exhaust their administrative relief before procuring judicial review. *See Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1092 (6th Cir. 1981) (citing *FTC v. Standard Oil of Calif.*, 449 U.S. 813 (1980)). "The purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence, to make a factual record, to apply its expertise and to correct its own errors so as to moot judicial controversies." *Shawnee*, 661 F.2d at 1092 (citing *Parisi v.*

Can File an Otherwise Untimely Complaint Under the 'Closely Related' Doctrine." (J.A. at 163.)

In addressing this issue, the district court found that the Board acted outside of its statutory authority when it allowed the General Counsel to file the Second Complaint under the "closely related" doctrine inasmuch as § 10(b) of the Act does not allow for a complaint to issue based upon any unfair labor practice that occurred more than six months prior thereto. The district court also found that the "closely related" doctrine of *Redd-I* applied only in the context of amending an existing complaint, and not in the context of filing a new complaint. Stated differently, according to the district court, "the existence of a prior complaint has no tolling effect on the statute of limitations regarding a subsequently filed complaint concerning the same set of underlying facts." (J.A. at 170.) The court thus concluded that it had subject matter jurisdiction over the Employers' claim, and thereby denied the Board's motion to dismiss. The court then found that any unfair labor practice charges in the Second Complaint based on charge numbers 7-CA-40759, 7-CA-40943, and 7-CA-40944 were barred by § 10(b) inasmuch as they were based on conduct that occurred more than six months prior to the time the charging party knew or reasonably should have known of the unfair labor practice, and enjoined the Board from prosecuting the Employers for this alleged conduct.

### C. Whether the District Court Properly Exercised Subject Matter Jurisdiction Over the Employers' Claim Pursuant to *Leedom v. Kyne*

As noted in Section A, judicial review of a Board's decision is vested by statute in the court of appeals upon the issuance a final order by the Board. *See* 29 U.S.C. § 160(f). However, the Supreme Court has carved out an exception to § 160(f) for those instances where 1) without district court jurisdiction, the aggrieved party would be "wholly deprived" of a statutory right, and 2) the Board action was taken in the

very simple question:    Has the NLRB violated an unambiguous statutory mandate?" (J.A. at 154.)

Of course, *Leedom* requires more; it also requires that absent jurisdiction in the district court, the aggrieved parties will be "wholly deprived" of meaningful judicial review. And there should be no doubt that this is required under *Leedom* where the Supreme Court rested its decision in *MCorp* solely on the basis that MCorp had available to it review in the appellate courts, thus making district court jurisdiction improper under *Leedom.*    In other words, in *MCorp,* the Supreme Court found that the district court did not have subject matter jurisdiction under *Leedom* without even addressing whether the Board had acted outside its statutory powers because the aggrieved party, MCorp, had an available means for judicial review in the circuit courts of appeal. *See MCorp,* 502 U.S. at 43.    The district court's failure to appreciate this requirement is partially the reason for the court's erroneous conclusion that it had jurisdiction under *Leedom* because, as illustrated *infra*, the Employers will have an opportunity for review of the Board's decision in the appellate courts, thereby making jurisdiction under *Leedom* improper on this basis alone. *See MCorp*, 502 U.S. at 43 ("If and when the Board finds that MCorp has violated that regulation, MCorp will have, in the Court of Appeals, an unquestioned right to review of both the regulation and its application.").

The district court found that it lacked jurisdiction over the following issues:    1) the Employers' argument that the Board's delay in bringing the instant charges violated the due process clause; 2) the Employers' argument that the *Redd-I* doctrine provides authority to the Board beyond that provided under the Act; and 3) the Board's argument that the availability of alternative judicial review in the court of appeals precludes jurisdiction by the district court under *Leedom.*    But the district court found that it could properly exercise jurisdiction over the issue of "Whether the Board

*Davidson*, 405 U.S. 34, 37 (1972)).    This Court recognized that the doctrine of exhaustion in the administrative context "'serves interests of accuracy, efficiency, agency autonomy and judicial economy[,]'" inasmuch as "the doctrine promotes a sensible division of tasks between the agency and the courts: parties are discouraged from weakening the position of the agency by flouting its processes and the courts' resources are reserved for review and resolution of those matters where a dispositive solution is unavailable in the administration process." *Shawnee*, 661 F.2d at 1092 (quoting *Ezratty v. Comm'r of Puerto Rico*, 648 F.2d 770, 774 (1st Cir. 1981)).

Of course, as with most procedural measures, the exhaustion doctrine as expressed in § 106(f) is not without exceptions.    Specifically, in *Leedom v. Kyne*, 358 U.S. 184, 190 (1958), the Supreme Court found that a litigant may bypass available administrative procedures where there is a readily observable usurpation of power not granted to the agency by Congress.    In *Leedom*, a challenge was brought in the district court to the Board's determination that a unit containing both professional and nonprofessional employees was appropriate for collective bargaining purposes on the basis that this determination was in direct contravention of § 159(b)(1) of the Act. *See id.* at 188.    The Board argued that the Act's provisions establishing review of the Board's final orders in the courts of appeals indicated a congressional intent to bar review of any Board decision in the district courts. *See id.* at 187.    The Supreme Court rejected this argument noting that "'[i]f the absence of jurisdiction of the federal courts meant a sacrifice or obliteration of a right which Congress had created, the inference would be strong that Congress intended the statutory provisions governing the general jurisdiction of those courts to control.'"    *Id*. at 190 (quoting *Switchman's Union of N. Am. v. Nat'l Mediation Bd.*, 320 U.S. 297, 300 (1943)).    The Court opined that because the Board certification order at issue was not ordinarily subject to judicial review, and because the professional employees could not have committed a violation of the Act so as to instigate the commencement of an unfair labor practice case, the

professional employees could not have obtained judicial review pursuant to section 160(f). As a result, the Court found that the absence of district court jurisdiction would have left the professional employees without any means to enforce their statutory rights under the Act, and ***therefore held that*** the district court had jurisdiction to hear the matter. *See id.* at 190-91. The Court reasoned that it "[could] not lightly infer that Congress does not intend judicial protection of rights it confers against agency action taken in excess of delegated powers." *Id.* at 190.

Several years later, in *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32, 43 (1991), the Supreme Court revisited *Leedom* and rejected the proposition that *Leedom* authorizes judicial review of any agency action that is alleged to have exceeded the agency's statutory authority. The Court noted that "central to [its] decision in *Leedom* was the fact that the Board's interpretation of the Act would wholly deprive the union of a meaningful and adequate means of vindicating its statutory rights." *Id.* In other words, in order for *Leedom* to apply, the Court found that there must be both a showing that the Board acted in excess of its delegated powers *and* that the aggrieved party would be "wholly deprived" of its statutory rights. The *MCorp* Court found this pivotal to its decision that the district court did not have jurisdiction under *Leedom* inasmuch as the Financial Institutions Supervisory Act of 1966 ("FISA") provided MCorp with a means of challenging the action taken by the Board of Governors of the Federal Reserve System in the circuit court of appeals. *See id.* at 43-44. Specifically, the Court opined:

> The cases before us today are entirely different from *Kyne* because FISA expressly provides MCorp with a meaningful and adequate opportunity for judicial review of the validity of the source of the strength regulation. If and when the Board finds that MCorp has violated that regulation, MCorp will have, in the Court of Appeals, an

> unquestioned right to review of both the regulation and its application.

*Id.* Because judicial review was available to MCorp at the court of appeals, the Court found it unnecessary to discuss whether the Board of Governors had exceeded its authority inasmuch as it was clear that MCorp could not meet both of *Leedom's* requirements. *See id.* at 44.

## B.  District Court's Order Finding that it had Subject Matter Jurisdiction

The district court recognized that in order for *Leedom* to apply, it was necessary to determine whether the Board acted in excess of its statutory powers. The court noted that *Leedom* does not confer jurisdiction to the district court for mere errors made by the Board; rather, the Board must have acted without statutory authority in order for the district court to have subject matter jurisdiction. Although the district court accurately recognized this requirement for jurisdiction under *Leedom*, the court failed to appreciate the significance of *Leedom's* other requirement for jurisdiction to vest with the district court; that is, without jurisdiction, the aggrieved parties have no other means within their control to protect and enforce their rights. The district court cited *MCorp* and even quoted the passage therefrom where the Supreme Court made clear that in order for *Leedom* to apply, the Board's action must "wholly deprive" the aggrieved party of a meaningful and adequate means of vindicating its statutory rights. However, the district court made no mention of the Supreme Court's holding in *MCorp* – that the district court did not have jurisdiction under *Leedom* because MCorp had an opportunity for meaningful review in the court of appeals – and in fact attempted to minimize *Leedom's* holding by claiming that the aggrieved parties there would have eventually had an opportunity to have had judicial review of their cause. The district court's failure to appreciate *Leedom's* mandate is perhaps best illustrated by the court's statement that, "*Leedom* requires the court to resolve only a