# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued November 15, 2013        Decided July 18, 2014

No. 12-1485

VILLAGE OF BARRINGTON, ILLINOIS,
PETITIONER

v.

SURFACE TRANSPORTATION BOARD AND
UNITED STATES OF AMERICA,
RESPONDENTS

CANADIAN NATIONAL RAILWAY COMPANY
AND GRAND TRUNK CORPORATION,
INTERVENORS

———

On Petition for Review of an Order
of the Surface Transportation Board

———

*Richard H. Streeter* argued the cause and filed the briefs for petitioner.

*Theodore L. Hunt*, Attorney, Surface Transportation Board, argued the cause for respondents. With him on the brief were *Mary G. Sprague*, Attorney, U.S. Department of Justice; *Raymond A. Atkins*, General Counsel, *Evelyn G. Kitay*, Associate General Counsel, and *Theodore L. Hunt*, Attorney, Surface Transportation Board. *Aaron P. Avila*, Attorney, U.S.

Department of Justice, and *Craig M. Keats*, Deputy General Counsel, Surface Transportation Board, entered appearances.

*Paul A. Cunningham*, *David A. Hirsh*, and *Theodore K. Klick* were on the brief for intervenors Canadian National Railway Company and Grand Trunk Corporation in support of respondents.

Before: GARLAND, *Chief Judge*, ROGERS, *Circuit Judge*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GARLAND.

GARLAND, *Chief Judge*: The Village of Barrington, Illinois, petitions for review of the Surface Transportation Board's denial of its request to reopen a 2008 proceeding in which the Board approved a railroad's acquisition of a Chicago-area railway company. This marks the second time the Village has asked us to "don our conductor's cap for a ride" to review that acquisition, *Vill. of Barrington*, *Ill. v. STB*, 636 F.3d 650, 657 (D.C. Cir. 2011). This time, the trip will be much shorter because the Village's jurisdictional ticket only permits us to review its new evidence.

I

In 2008, the Surface Transportation Board (STB) approved the acquisition of the EJ&E Railway Company by the Canadian National Railway Company. The purpose of the acquisition was to allow Canadian National to transfer train traffic from five of its lines that enter the heavily congested Chicago area to EJ&E's main line, which encircles the city. Because the increased train traffic on EJ&E's line was expected to increase delays of automotive traffic at highway intersections with that line, the STB required Canadian National to pay for environmental

mitigation at affected intersections as a condition of approval of the acquisition.  At two intersections, the STB concluded that the effect of the acquisition on highway traffic was sufficient to require Canadian National to pay for a grade separation -- that is, construction of an underpass or overpass to allow traffic to bypass the railroad entirely.  *Canadian Nat'l Ry. Co.*, STB Finance Docket No. 35087, Decision No. 16, at 44 (Dec. 24, 2008), 2008 WL 8139694 [hereinafter 2008 STB Decision].

The Village of Barrington wanted a grade separation for one of its highway crossings, too.  But the STB determined that the increase in train-caused traffic delay projected by 2015 at the Barrington  intersection did not approach the 40 hours per day that the STB required before it would consider the imposition of mitigation conditions.  The Village then hired a consultant of its own, whose report concluded that projected traffic congestion at the U.S. 14 intersection in Barrington exceeded the STB's 40-hour threshold.  In response, the STB performed a follow-up assessment of Barrington traffic and once again concluded that a grade separation in Barrington was unwarranted.  2008 STB Decision at 45 & n.101.

In 2009, Barrington, along with a number of other parties, petitioned this court for review of the STB's approval of the acquisition, as well as the associated mitigation conditions. Because Barrington failed to cite its consultant's traffic study in its opening brief, the court declined to consider the study in evaluating the Village's challenge. *Vill. of Barrington, Ill.*, 636 F.3d at 672.  After considering the merits of the arguments that had properly been raised, the court denied the petition for review. *Id.*

Thereafter, Barrington asked its consultant to perform an updated traffic projection, based in part on post-acquisition traffic conditions.  J.A. 370.  Barrington's new study again

found that the projected traffic at the U.S. 14 intersection would exceed the threshold for mitigation consideration, albeit by fewer hours than its 2008 study. Armed with this new study, Barrington asked the STB to reopen the proceeding and require Canadian National to fund a grade separation at Barrington's intersection.

Pursuant to statute, the STB "may . . . reopen a proceeding" based upon "material error, new evidence, or substantially changed circumstances." 49 U.S.C. § 722(c). Barrington contended that its latest study constituted "new evidence" that justified reopening. It also argued that the Board's 2008 assessment contained "material errors" in its methodology that rendered the Board's original decision invalid.

In a lengthy opinion addressing Barrington's claims, the STB denied Barrington's request to reopen the proceeding. *Canadian Nat'l Ry. Co.*, STB Finance Docket No. 35087, Barrington Petition for Mitigation, at 2 (J.A. 488) (Nov. 7, 2012), 2012 WL 5458828 [hereinafter 2012 STB Decision]. The Board explained that, because Barrington's 2011 study made a weaker case for a grade separation than did its 2008 study, consideration of the new study would not change the original outcome. *Id.* at 10 (J.A. 496). It also said, inter alia, that exceeding the 40-hour-delay threshold was not sufficient to justify a grade separation and that, in light of the other relevant factors, a grade separation at U.S. 14 was unwarranted. *Id.* at 10-20 (J.A. 496-506).

Barrington now petitions for review of the STB's denial of its request to reopen the Board's original decision.

5

II

In its petition for review, Barrington renews its claims that there were "material errors" in the STB's initial decision to approve Canadian National's purchase of the EJ&E Railway Company in 2008, and that, in any event, "new evidence" warrants reopening.

Barrington's claims of material error are outside our jurisdiction. In *ICC v. Brotherhood of Locomotive Engineers*, the Supreme Court held that, "where a party petitions an agency for reconsideration on the ground of material error, *i.e.*, on the same record that was before the agency when it rendered its original decision, an order which merely denies rehearing of . . . [the prior] order is not itself reviewable." 482 U.S. 270, 280 (1987) (*BLE*) (internal quotation marks omitted). That is so, the Court said, even if the agency "order refusing reconsideration discussed the merits of the [petitioners'] claims at length," as long as the agency's "formal disposition is to deny reconsideration, and . . . it makes no alteration in the underlying order." *Id.* In the instant case, the STB denied rehearing of its 2008 decision, and it made no alteration in that underlying order. Accordingly, there is nothing more we can say about Barrington's claims of material error. *See id.* at 287 (dismissing, for lack of jurisdiction, petition challenging the ICC's refusal to reconsider a prior order); *Town of Springfield, N.J. v. STB*, 412 F.3d 187, 189 (D.C. Cir. 2005) (holding that, "when a reopening petition rested on 'material error,' the court has no jurisdiction to review a denial of the petition"); *Schoenbohm v. FCC*, 204 F.3d 243, 250 (D.C. Cir. 2000) (holding that the court lacks jurisdiction to review an agency's denial of a petition for reconsideration "unless the request for reconsideration was based on new evidence or changed circumstances").

By contrast to its treatment of claims of material error, *BLE* held that, "[i]f the petition that was denied sought reopening on the basis of new evidence or changed circumstances review is available." 482 U.S. at 284. The piece of new evidence Barrington submits is its 2011 study, which updated its 2008 vehicle delay projections based on mid-2011 observations of Canadian National's actual post-acquisition operations in Barrington. 2012 STB Decision at 7 (J.A. 493). The STB maintains that Barrington's evidence is not really new because most of the factors considered in the study were the same in 2008 and could have been raised at that time. *See Town of Springfield*, 412 F.3d at 189 (holding that evidence that "could have been placed before the Board in the original proceeding" is not new evidence). But there is no dispute that observations of 2011 train traffic could not have been put before the Board in 2008. Whether this new evidence (and this new evidence only) was enough to warrant a change in the Board's original decision is a merits question; it is not a question of jurisdiction. As we said in *Fritsch v. ICC*, as long as "the motion to reopen was based on non-pretextual grounds of new matter or changed circumstances," we have jurisdiction to review its denial. 59 F.3d 248, 252 (D.C. Cir. 1995); *see Advanced Commc'ns Corp. v. FCC*, 376 F.3d 1153, 1156 (D.C. Cir. 2004).

Although we have jurisdiction to review Barrington's new evidence claim, our standard of review is highly deferential. As the Court said in *BLE*, "overturning [a] refusal to reopen requires 'a showing of the clearest abuse of discretion.'" 482 U.S. at 278 (quoting *United States v. Pierce Auto Freight Lines, Inc.*, 327 U.S. 515, 534-535 (1946)); *see also Advanced Commc'ns Corp.*, 376 F.3d at 1156; *AT&T Corp. v. FCC*, 363 F.3d 504, 509 (D.C. Cir. 2004). We find no such abuse here.

In refusing to reopen its 2008 decision, the STB noted that Barrington's 2011 post-acquisition study projected *less* impact

on vehicle delay than did its 2008 pre-acquisition study: The 2011 study projected 98-100 hours of additional traffic delay per day at the U.S. 14 intersection as a consequence of the acquisition; the original study projected 135-205 hours. 2012 STB Decision at 8 (J.A. 494). It was not an abuse of discretion for the STB to conclude that, if the traffic projected by the original study was insufficient to warrant requiring a grade separation, a lower post-acquisition projection "would not have altered the outcome the Board previously reached." *Id.* at 10 (J.A. 496).

In response, Barrington argues that the new study's projection of 98-100 additional hours of delay is significant because the Board concluded in 2008 that a mere 40 hours of additional delay was sufficient for an intersection to qualify as "substantially affected" and, therefore, as a candidate for a grade separation. But this ignores the fact that Barrington's original projection of 135-205 hours also exceeded the 40-hour mark. As the Board explained, 40 hours of delay was merely the threshold for consideration of mitigation measures; it "did not automatically warrant any mitigation in the [original] [d]ecision, much less a grade separation." *Id.* Predicted vehicle delay was only one of several factors the Board considered in determining whether mitigation should be required at an intersection. In fact, of the 13 intersections that met the threshold, the STB required grade separations at only two. *See id.* at 11 (J.A. 497).

To the extent Barrington argues that the STB's original decision improperly weighed the significance of then-projected delay, it is making a material error argument that we cannot review. *See W. Pac. Stockholders' Protective Comm. v. ICC*, 848 F.2d 1301, 1303 (D.C. Cir. 1988) (holding that a claim of "new evidence" that is "really a challenge to" the analysis in an agency's original decision is unreviewable). This leaves only the question of whether the new evidence regarding vehicle

delay warranted a different decision. And as we have said, because the new evidence projected less delay than the original evidence, the Board did not abuse its discretion in concluding that such evidence would not have changed its ultimate decision about requiring a grade separation. *See City of S. Bend, Ind. v. STB*, 566 F.3d 1166, 1171 (D.C. Cir. 2009) (finding that agency's refusal to reopen was justified because the new evidence "did not require it to reverse its [original] determination"); *Advanced Commc'ns Corp.*, 376 F.3d at 1159 (same).[1]

## III

Because we lack jurisdiction to consider Barrington's claims of material error, and because the STB did not abuse its discretion in deciding that Barrington's new evidence did not warrant reopening the Board's original decision, Barrington's petition for review by this court is

*Denied.*

---

[1]We reach the same conclusion regarding Barrington's contention that the 2011 study shows that Barrington's U.S. 14 intersection received disparate treatment in comparison to intersections in other towns. As the STB explained, its original decision examined intersections on a case-by-case basis, and factors beyond vehicle delay played an important role in its ultimate determinations. *See* 2012 STB Decision at 13-16 (J.A. 499-502).