RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 14a0161p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

LIBAN MUSE JAMA,

               *Plaintiff-Appellant,*

  *v.*

No. 13-4192

DEPARTMENT OF HOMELAND SECURITY, et al.,

               *Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:12-cv-02881—David D. Dowd, Jr., District Judge.

Argued: May 7, 2014

Decided and Filed: July 25, 2014

Before: NORRIS, CLAY, and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Brian J. Halliday, THE LAW OFFICES OF BRIAN J. HALLIDAY, Beachwood, Ohio, for Appellant. Erez Reuveni, OFFICE OF IMMIGRATION LITIGATION, Washington, D.C., for Appellees. **ON BRIEF:** Brian J. Halliday, THE LAW OFFICES OF BRIAN J. HALLIDAY, Beachwood, Ohio, for Appellant. Erez Reuveni, OFFICE OF IMMIGRATION LITIGATION, Washington, D.C., for Appellees. Mary Kenney, AMERICAN IMMIGRATION COUNCIL, Washington, D.C., for Amicus Curiae.

_____

## OPINION

_____

CLAY, Circuit Judge. Plaintiff Liban Muse Jama appeals the district court's dismissal of his complaint seeking judicial review, under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551, *et seq.* (2011), of certain actions by the United States Citizenship and

1

Immigration Service ("USCIS"), including USCIS's termination of Jama's refugee status.  For the reasons that follow, we hold that termination of refugee status and denial of a status adjustment application are not "final agency actions" reviewable in district court under the APA, and **AFFIRM** the district court's dismissal of Jama's complaint on the basis of Jama's failure to state a claim under the APA.

## BACKGROUND

Over ten years after Jama was admitted to the United States as a refugee based on his sworn statement that he was the minor child of a principal refugee, USCIS learned that Jama had made material factual misrepresentations in his application for refugee status.  At the time of his admission to the United States, Jama was not, in fact, a legal minor *or* the biological child of the principal refugee.  After providing Jama with notice and an opportunity to respond, USCIS terminated Jama's refugee status on the basis of his fraud, pursuant to 8 C.F.R. § 207.9.  USCIS also denied Jama's pending applications for status adjustment and fraud waiver.  USCIS subsequently denied Jama's motion to reopen these decisions, and initiated removal proceedings against him, as required by the statute.  *See* 8 C.F.R. § 207.9 ("Upon termination of refugee status, USCIS will process the alien under sections 235, 240, and 241 of the Act.").  The agency did not rule on Jama's pending application for asylum and for withholding of removal (Form I-589), which Jama had submitted to the USCIS Asylum Office prior to the termination decision.

On August 18, 2011, Jama was sent a notice to appear before an immigration judge ("IJ") on the removability charges.  On that same date, USCIS also referred Jama's application for asylum to the IJ presiding over Jama's removal proceedings.

On June 14, 2012, the IJ held a merits hearing on the removability charges, and concluded that Jama was removable based on the charge that he did not possess a valid immigrant visa or entry document when he was admitted to the United States.  As part of the removability analysis, the IJ considered whether or not Jama was admissible under INA § 207(c)(2)(A) at the time of his entry into the United States.[1]  The IJ concluded based on the

---

[1]Because Jama's entry document was stamped with the code used for a child of a derivative refugee (Code "RE3"), the IJ limited its analysis to the narrow question of whether Jama was eligible for entry as a derivative beneficiary at the time of his entry.  It did not consider whether Jama qualified as a refugee in his own right.

evidence presented that Jama was not eligible for an entry document as a derivative beneficiary at the time of his entry into the United States, and found him removable on that basis. During this hearing, Jama attempted to argue that the termination of his refugee status was improper. The IJ dismissed Jama's argument that his refugee status was improperly terminated, explaining that USCIS's decision to terminate Jama's refugee status "is irrelevant . . . . [and] has no implications for whether [Jama] possessed a valid entry document at the time of his admission." [R. 28-1, IJ Order at 5.]

Jama filed a motion for reconsideration, which the IJ denied on August 8, 2012. In its order denying reconsideration, the IJ reiterated that the termination of Jama's refugee status was irrelevant to its inquiry, and explained that it lacked jurisdiction to review USCIS's decision to terminate refugee status, citing 8 C.F.R. § 207.9. That regulation provides that "[t]here is no appeal under this chapter I from the termination of refugee status by USCIS." 8 C.F.R. § 207.9. The IJ did not rule on Jama's asylum claims, which remain pending in immigration court as of the date of this writing.

On November 19, 2012, with his asylum claims still pending in immigration court, Jama filed the instant action in United States District Court for the Northern District of Ohio against USCIS, the Department of Homeland Security, and other related individuals and entities (collectively, "Defendants"). In his complaint, Jama asserted jurisdiction under 28 U.S.C. § 1331 (the "federal question statute"); 28 U.S.C. § 2201 (the "Declaratory Judgment Act"); and 5 U.S.C. § 555 and § 701, *et seq.* (the "APA"). He alleged, *inter alia,* unlawful termination of his refugee status, improper denial of his status adjustment application, and improper denial of his fraud waiver application. He sought a declaration that USCIS's actions were unlawful, and that he continues to be a derivative refugee.**2**

---

**2**Jama's complaint stated four causes of action: "Count 1. Violation of Due Process;" "Count 2. Any misrepresentation in Mr. Jama's immigration record are immaterial as he meets the definition of refugee at the time of admission within the meaning of the Immigration and Nationality Act and the U.N. Protocol and Convention;" "Count 3. Termination of Mr. Jama's refugee status by USCIS contradicts the principles of the U.N. Convention;" and "Count 4. The U.S. Department of Homeland Security has no authority to terminate refugee status." The district court found that "a number of his claims are not in fact claims. Rather they are arguments in support of his principal contention, which is that USCIS erred in its decision to terminate his refugee status without determining that he would not have qualified as a refugee in his own right at the time he was admitted and/or that USCIS had an affirmative duty to elicit facts regarding whether he could have qualified in his own right at that time." *Jama v. U.S.*

Defendants filed a motion to dismiss, asserting lack of subject matter jurisdiction and failure to state a claim under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The district court found that neither the Federal Question statute nor the Declaratory Judgment Act confers jurisdiction over Jama's complaint, and that the APA "is the only authority cited by [Jama] which could provide jurisdiction." *Jama v. U.S. Citizenship & Immigration Servs.*, 962 F. Supp. 2d 939, 947 (N.D. Ohio 2013). The court subsequently concluded that it ultimately lacked jurisdiction under the APA to review the termination of Jama's refugee status and the denial of his application for status adjustment because neither decision is "final agency action," as required for judicial review under the APA. *Id.* at 949–50. As an alternative basis for dismissal, the district court found that 8 U.S.C. §§ 1252(a)(5) and (b)(9) stripped the court of any jurisdiction it might otherwise have over Jama's claims. The court also concluded that it lacked authority under the APA to review the denial of Jama's fraud waiver application, since USCIS's decision to deny Jama's fraud waiver application is "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a). Accordingly, the district court granted Defendants' motion to dismiss. Jama timely appealed.

## DISCUSSION

We review *de novo* a district court's order dismissing a claim for lack of subject matter jurisdiction or failure to state a claim. *Inge v. Rock Fin. Corp.,* 281 F.3d 613, 619 (6th Cir. 2002); *E. Brooks Books, Inc. v. City of Memphis,* 633 F.3d 459, 464 (6th Cir. 2011).

At the outset, we emphasize that both parties agree that USCIS's actions, including its termination of Jama's refugee status and its denial of Jama's status adjustment application, are reviewable in federal court at some stage prior to Jama's removal; the dispute in this case concerns *when* those actions are subject to review, and *which* federal court is vested with authority to hear the claims. Jama argues that he is entitled to immediate judicial review of USCIS's actions in the district court under the APA. Meanwhile, Defendants contend that the challenged actions cannot be reviewed until after the conclusion of removal proceedings, including resolution of Jama's pending asylum application, and submit that "this claim, and each and every other basis for relief Jama might raise, can be addressed before the IJ, raised again on

_____

*Citizenship & Immigration Servs.*, 962 F. Supp. 2d 939, 957 (N.D. Ohio 2013).

appeal to the Board of Immigration Appeals ("BIA") if necessary, and ultimately, as Section 1252(b)(9) requires, receive review in federal court in the courts of appeal." Def. Br. at 47.**3**

## I.    Subject Matter Jurisdiction

The APA is not a jurisdiction-conferring statute; it does not directly grant subject matter jurisdiction to the federal courts. *See Califano v. Sanders*, 430 U.S. 99, 105 (1977); *Air Courier Conference v. Am. Postal Workers Union*, 498 U.S. 517, 523 n.3 (1991). Rather, the judicial review provisions of the APA provide a limited cause of action for parties adversely affected by agency action. *See Bennett v. Spear*, 520 U.S. 154, 175 (1997); *Japan Whaling Ass'n v. Am. Cetacean Soc'y,* 478 U.S. 221, 230 n. 4 (1986); *Md. Dep't of Human Res. v. Dep't of Health & Human Servs.*, 763 F.2d 1441, 1445 n. 1 (D.C. Cir. 1985) ("The Supreme Court has clearly indicated that the [APA] itself, although it does not create subject-matter jurisdiction, does supply a generic cause of action in favor of persons aggrieved by agency action.").

Although the APA does not directly grant jurisdiction, the federal question statute, 28 U.S.C. § 1331, "confer[s] jurisdiction on federal courts to review agency action, regardless of whether the APA of its own force may serve as a jurisdictional predicate." *Califano*, 430 U.S. at 105; *see also Hill v. Norton*, 275 F.3d 98, 103 (D.C. Cir. 2001) ("challenges brought under the APA fall within the reach of the general federal jurisdiction statute, 28 U.S.C. § 1331"). In the instant case, the district court had jurisdiction over Jama's APA claims pursuant to the federal question statute, 28 U.S.C. § 1331. Accordingly, dismissal pursuant to 12(b)(1) was improper.**4**

## II.    Review Under the APA

Having established that the district court did, in fact, have subject matter jurisdiction over this claim, we "proceed to address whether [Jama's] allegations state a claim" on the merits.

---

**3**8 U.S.C. §1252(b)(9) channels review of all questions of law or fact arising from actions taken to remove an alien to the Court of Appeals, and not the district court.

**4**Because the APA does not confer jurisdiction, elements of a claim under the APA, including the final agency action requirement, are not jurisdictional. *See Trudeau v. Fed. Trade Comm'n*, 456 F.3d 178, 184 (D.C. Cir. 2006) ("[T]he APA's final agency action requirement is not jurisdictional"). Accordingly, we address the "final agency action" requirement of § 704 in the following section, where we consider whether Jama has a valid cause of action for his claims against Defendants. *See Reliable Automatic Sprinkler Co. v. Consumer Prod. Safety Comm'n,*, 324 F.3d 726, 731 (D.C. Cir. 2003) ("If there was no final agency action . . . there is no doubt that appellant would lack a cause of action under the APA.").

*Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010).**[5]**   Section 704 of the APA authorizes judicial review of "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court . . . ." 5 U.S.C. § 704.   The APA expressly does not permit judicial review in those instances where "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a).

## 1. The Denial Of Jama's Fraud Waiver Application Is Committed To Agency Discretion By Law

Title 8 U.S.C. § 1182(i) forecloses judicial review of an agency's discretionary decision to deny a request for a waiver of inadmissibility based on fraud or misrepresentation.  The statute provides: "No court shall have jurisdiction to review a decision or action . . . regarding a waiver under paragraph (1)."  8 U.S.C. § 1182(i)(2).  Under the clear language of the statute, denial of a fraud waiver application is clearly "agency action . . . committed to agency discretion by law." 5 U.S.C. § 701(a).

In an attempt to eschew this preclusive rule, Jama attempts to recast USCIS's decision as a "refusal to adjudicate," which Jama describes as a nondiscretionary decision.  We agree with the district court's observation that "[t]his argument is disingenuous" since "USCIS did consider and deny Jama's I-602 application for a fraud waiver." *Jama*, 962 F. Supp. 2d at 967.  We also agree that "the distinction Jama attempts to make is one without a difference. . . . [I]t is clear that [Jama] wants this Court to review the merits of the fraud waiver denial, which this Court is barred by statute from doing." *Id.*  Accordingly, dismissal of this portion of Jama's complaint was appropriate.

## 2. The Termination Of Jama's Refugee Status And Denial Of Jama's Status Adjustment Application Are Not "Final Agency Action"

There is no statute that precludes judicial review of USCIS's termination of Jama's refugee status or its denial of Jama's status adjustment application.  Nor is there a statute that expressly makes these actions reviewable in district court.  In order to state a claim under the

---

**[5]**Remand is not necessary for this error. *See Morrison*, 561 U.S. at 254 ("Since nothing in the analysis of the courts below turned on the mistake, a remand would only require a new Rule 12(b)(6) label for the same Rule 12(b)(1) conclusion.").

APA, Jama "must allege that [his] injury stems from a final agency action for which there is no other adequate remedy in court." *Bangura v. Hansen*, 434 F.3d 487, 500 (6th Cir. 2006) (citing 5 U.S.C. § 704).

> We apply a two-prong test to determine whether an agency action is "final:"
>
> First, the action must mark the "consummation" of the agency's decisionmaking process--it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which "rights or obligations have been determined," or from which "legal consequences will flow."

*Bennett*, 520 U.S. at 177–78 (internal citations omitted); *see also Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992) ("The core question is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties."). An agency action is not final if it "does not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action." *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939).

Jama contends that the actions for which he seeks judicial review satisfy both prongs of the "final agency action" test, notwithstanding the fact that his removal proceedings are ongoing. With respect to the first prong, Jama avers that his inability to pursue a direct appeal of USCIS's decision to terminate his refugee status,[6] and the IJ's inability to review the decision, means that the decision necessarily marks the consummation of the agency's decisionmaking process. We disagree.

Congress has delegated to specific government agencies the task of enforcing immigration laws and determining aliens' immigration statuses. The agencies' decisionmaking process consummates when they issue a final decision regarding an alien's immigration status. Termination of refugee status and denial of a status adjustment application are intermediate steps in the removal of an alien, and not the consummation of the agencies' decisionmaking on the alien's immigration status. Further administrative relief is available in the removal proceeding, which necessarily follows a decision to terminate an alien's refugee status. *See* 8 C.F.R. § 207.9.

---

[6]The immigration regulation at 8 C.F.R. § 207.9 provides, "[t]here is no appeal . . . from the termination of refugee status by USCIS."

Jama's removal proceedings are presently ongoing; the IJ has not yet considered his application for asylum and for withholding of removal. If Jama's application is granted, he will be permitted to remain lawfully in the United States notwithstanding USCIS's decision to terminate his refugee status or the IJ's decision regarding removability. Thus, USCIS's decision is merely an intermediate decision at this stage of the proceedings.

Jama contests this point, arguing that the approval of his application for asylum status would not provide administrative relief, since there are substantive and practical differences between the grant of asylum status and the reinstatement of his refugee status. We recognize the legal and practical differences between refugee status and asylum status, but find that the operative question in this case for purposes of the APA is whether there is a final decision on Jama's *immigration status*. Once a final decision is rendered—regardless of the nature of that decision, then Jama can seek review of that decision, as well as all intermediate decisions, including termination of Jama's refugee status. This approach is consistent with Congress' clear intent to streamline the review process by "consolidat[ing] and channel[ing] review of *all* legal and factual questions that arise from the removal of an alien into the administrative process, with judicial review of those decisions vested exclusively in the courts of appeals." *Aguilar v. U.S. Immigration & Customs Enforcement Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 9 (1st Cir. 2007); *see id.* ("In enacting section 1252(b)(9), Congress plainly intended to put an end to the scattershot and piecemeal nature of the review process that previously had held sway in regard to removal proceedings.").

Jama's primary argument against dismissal is that he will be denied the opportunity to be heard on USCIS's termination of his refugee status if the district court does not review USCIS's action at this time. But, as the district court recognized, "the APA provides that '[a] preliminary, procedural, or intermediate agency action ruling not directly reviewable is subject to review on the review of the final agency action.'" *Jama*, 962 F. Supp. 2d at 964 (quoting 5 U.S.C. § 704). Accordingly, once the agency has made a final decision on Jama's immigration status, *i.e.*, at the conclusion of removal proceedings and following appeal to the BIA, then Jama may seek review of intermediate agency actions, including the termination of his refugee status and the denial of his status adjustment application, in the United States Court of Appeals. *See Qureshi v. Holder*,

663 F.3d 778, 780 (5th Cir. 2011) (stating that although "[n]either the IJ nor the BIA has authority to review USCIS's decision to terminate asylum . . . if the BIA upholds the final order of removal, the ex-asylee may then appeal to the appropriate circuit court to review 'constitutional claims or questions of law' underlying the final order of removal, including direct challenges to USCIS's original decision") (internal citation omitted). At the conclusion of the removal proceedings, Jama can challenge both the outcome of those proceedings as well as USCIS's actions in a petition for review. At that time, the Court of Appeals can review each individual claim, including Jama's challenges to intermediate agency actions. Thus, there remains an avenue available for effective review of USCIS's decision to terminate Jama's refugee status and deny Jama's status adjustment application.

For these reasons, we hold that termination of refugee status and denial of a status adjustment application are not "final agency actions" reviewable in district court under the APA, and, consequently, Jama's claim was properly dismissed.

## CONCLUSION

For the reasons stated above, we **AFFIRM** the dismissal of Jama's complaint. Jama can petition this Court for review of the challenged agency actions after the conclusion of his removal proceedings. At that time, this Court can consider each of USCIS's decisions—the termination of Jama's refugee status, the denial of his status adjustment application, and the denial of his fraud waiver application—as well as the IJ and BIA's final decisions regarding Jama's removability and asylum application.