RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0191p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

_____

CLARENCE S. BERRY,

*Plaintiff-Appellant,*

*v.*

No. 15-6316

UNITED STATES DEPARTMENT OF LABOR,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Kentucky at Paducah.
5:14-cv-00228—Gregory N. Stivers, District Judge.

Argued: June 15, 2016

Decided and Filed: August 11, 2016

Before: GIBBONS, GRIFFIN, and DONALD, Circuit Judges.

_____

**COUNSEL**

_____

**ARGUED:** D. Sean Nilsen, FURMAN & NILSEN, PLLC, Louisville, Kentucky, for Appellant. Terry M. Cushing, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellee. **ON BRIEF:** D. Sean Nilsen, FURMAN & NILSEN, PLLC, Louisville, Kentucky, for Appellant. Monica Wheatley, UNITED STATES ATTORNEY'S OFFICE, Louisville, Kentucky, for Appellee.

_____

**OPINION**

_____

GRIFFIN, Circuit Judge. The Administrative Procedure Act authorizes judicial review of "final agency action," subject to certain limitations. One of those limitations applies to decisions "committed to agency discretion by law." Plaintiff Clarence Berry challenges the Department of

1

Labor's refusal to reopen his claim for compensation benefits based on new evidence. The Department contends the APA does not authorize judicial review of such decisions, both because they are not a "final agency action" and because they are "committed to agency discretion by law." We disagree on both points. The decision not to reopen Berry's claim for benefits based on new evidence satisfies the Supreme Court's litmus test for "final agency action," and it is not the type of decision the Supreme Court has recognized as being "committed to agency discretion by law." However, we nonetheless conclude that the district court properly dismissed plaintiff's complaint because his reopening request was not actually based on new evidence. It instead alleged a material error in the agency's initial decision. That distinction is critical because, under Supreme Court precedent, reopening requests based on material error *are* "committed to agency discretion by law" and therefore unreviewable. Accordingly, we affirm the judgment of the district court.

I.

In 2000, Congress enacted the little-known Energy Employees Occupational Illness Compensation Program Act, 42 U.S.C. § 7384 *et seq.* ("EEOICPA" or "the Act"). The purpose of the Act was to provide compensation and other services to current and former U.S. Department of Energy ("DOE") employees and contractors (or their survivors) who developed illnesses relating to exposure to ultra-hazardous substances at DOE sites. *See* 42 U.S.C. § 7384. In its current form, the Act establishes two compensation programs, creatively referred to as "Part B" and "Part E" for their placement in the statutory taxonomy. *See* 42 U.S.C. §§ 7384*l*–7384w-1 (Part B) & §§ 7385s–7385s-16 (Part E). This case involves a claim under Part B.

Under Part B, a "covered employee" (or his or her survivor) is entitled to a lump sum payment of $150,000 "for the disability or death of that employee from that employee's occupational illness." 42 U.S.C. § 7384s(a)(1). To claim benefits under Part B, a person must file a claim with the Office of Workers' Compensation Programs (OWCP), submitting evidence verifying employment at a "DOE facility," as well as a recognized occupational illness. *See, e.g.*, 20 C.F.R. § 30.205. The adjudication process culminates in a final decision by the Final Adjudication Branch (FAB), 20 C.F.R. §§ 30.300, 30.316, which the claimant has an opportunity to challenge in federal court, 20 C.F.R. § 30.319(d).

Pertinent here, the process also allows for reopening of claims. *See* 20 C.F.R. § 30.320. A claimant may request to reopen his or her claim "[a]t any time after the FAB has issued a final decision" by submitting "new evidence of either covered employment or exposure to a toxic substance" or identifying a change in the medical guidelines. *Id.* § 30.320(b); *see also id.* § 30.320(a) (authorizing the Director of the compensation program to reopen a claim at any time). The Director must then determine whether the new evidence "is material to the claim." *Id.* § 30.320(b)(1). If so, the Director will reopen the claim and return it to the OWCP for a new recommended decision. *Id.* The regulations provide that "[t]he decision whether or not to reopen a claim under this section is solely within the discretion of the Director . . . and is not reviewable." *Id.* § 30.320(c).

## II.

Plaintiff Clarence Berry is the son of Leslie Berry, Jr. In the early 1950s, Leslie worked for various construction subcontractors, including installing insulation for the Breiding Insulation Company between October and December 1952. During that time, Breiding did subcontracting work at the Paducah Gaseous Diffusion Plant. Everyone agrees the Paducah Plant is a "DOE facility" within the meaning of the Act. Less clear, however, is whether Leslie actually performed work at the Paducah Plant. Breiding's employment records were destroyed in a fire. And the local Insulators Union has no record of Leslie's work history because he was not a member of that union; he worked on a temporary permit and, according to the union, "records were not kept on the temporary workers." As a result, there are no records of the specific job sites on which Leslie performed work for Breiding in 1952.

Fast-forward fifty years. Leslie died in 1995. Five years later, Congress passed the EEOICPA. Three years after that, on December 12, 2003, Leslie's son, Clarence Berry, filed a claim under Part B of the EEOICPA, seeking compensation as a survivor of a "covered beryllium employee." *See* 42 U.S.C. § 7384*l*(1)(A). Berry submitted his father's medical records and employment history information, including a Social Security Administration record identifying Leslie's employers during the relevant time period. After investigating the claim, the OWCP determined it could not verify Leslie's employment at a DOE facility. It recommended Berry's claim be denied because he failed to "establish[] that Leslie A. Berry, Jr., was a covered

employee, by providing the employment evidence required to establish that he worked at a covered DOE facility." On September 2, 2004, the FAB accepted the recommendation and denied Berry's claim.

Berry did not ask the Department to reconsider its denial or seek judicial review of the agency's decision. Instead, ten years later, on July 2, 2014, Berry filed a request to reopen his claim under 20 C.F.R. § 30.320. He contended that new employment evidence confirmed that Leslie was employed by Breiding at the Paducah Plant. Here is how Berry explained this "new evidence":

> Mr. Leslie Berry was employed by Breiding/Breeding Insulation from October 1952 – December 1952 (attached statement of social security earnings). Breeding Insulation held a contract with Paducah Gaseous Diffusion Plant from July 1952 – October 1953 (attached Paducah Gaseous Diffusion Plant sub-contractor list).

> When Mr. Berry's employment verification was researched by CPWR [the Center for Protection of Worker's Rights] it was found that Breiding Insulation records were destroyed in a fire. Mr. Berry belonged to Cement Masons Local 125 but worked on a permit through the Insulators Local. Because he was not a member of the Insulators Union, records are unavailable (attached CPWR research results).

On October 29, 2014, the Director denied the reopening request because "[a] review of the records submitted . . . [found] the documents [were] duplicate to evidence already reviewed and considered in the final decision of September 2, 2004."

Berry then filed this suit, challenging the Department's decision denying his request to reopen. The Department moved to dismiss the case, arguing that plaintiff failed to state a claim under the APA "because [the refusal to reopen] is not a 'final agency action' pursuant to 5 U.S.C. § 704." The district court granted the Department's motion, dismissing plaintiff's complaint for lack of subject-matter jurisdiction because the Department's refusal to reopen was not the type of agency action subject to judicial review under the APA. Plaintiff appeals.

III.

This court has appellate jurisdiction under 28 U.S.C. § 1291. The district court had subject-matter jurisdiction under 28 U.S.C. § 1331. *See Reno v. Catholic Soc. Servs., Inc.,*

509 U.S. 43, 56 (1993) (stating that "28 U.S.C. § 1331 . . . confers jurisdiction on federal courts to review agency action" (quotation marks and brackets omitted)). To the extent the district court granted the Department's motion to dismiss on lack-of-jurisdiction grounds, it was mistaken. *See Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 494 (6th Cir. 2014). The Department's challenge to the availability of judicial review under the APA is properly analyzed under Federal Rule of Civil Procedure 12(b)(6) and whether plaintiff has stated a valid claim for relief. *Id.* at 494 n.4 & 495. The district court's procedural error is ultimately harmless because "nothing in [its] analysis . . . turned on the mistake, [and] a remand would only require a new Rule 12(b)(6) label for the same Rule 12(b)(1) conclusion." *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 254 (2010).

We review *de novo* a district court's order dismissing a claim for failure to state a claim. *Jama*, 760 F.3d at 494. In reviewing a motion based on Rule 12(b)(6), "we accept all allegations in the complaint as true and determine whether the allegations plausibly state a claim for relief." *Roberts v. Hamer*, 655 F.3d 578, 581 (6th Cir. 2011) (internal quotation marks omitted). The same *de novo* standard of review applies to questions of statutory interpretation. *Id.* at 582.

IV.

The question presented—whether the Department's decision not to reopen Berry's claim is subject to judicial review—is one of first impression, at least as it pertains to the EEOICPA. But the framework for our analysis is well-defined. The APA authorizes aggrieved individuals to seek judicial review of agency decisions, subject to certain conditions. 5 U.S.C. § 702. First, the challenged action must be "made reviewable by statute" or be a "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. And, second, the action must not be precluded from judicial review by statute, 5 U.S.C. § 701(a)(1), or be "committed to agency discretion by law," § 701(a)(2). The Department argues that its refusal to reopen a Part B claim fails both conditions, contending that it is not a "final agency action," and even if it is, it is nevertheless precluded from judicial review as a decision "committed to agency discretion by law." We take each contention in turn.

A.

We must initially decide whether the refusal to reopen constitutes "final agency action" for purposes of APA review. An agency action must generally meet two conditions to be considered "final" under the APA. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016). First, the challenged action must mark the consummation of the agency's decisionmaking process. *Id.* (citing *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)). This means the action "must not be of a merely tentative or interlocutory nature," *Bennett*, 520 U.S. at 178, such that judicial review of the action would "disrupt the orderly process of adjudication," *Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic*, 400 U.S. 62, 71 (1970). Second, the challenged action must determine rights and obligations of a party or cause legal consequences. *Hawkes Co.*, 136 S. Ct. at 1813 (citing *Bennett*, 520 U.S. at 177–78). In other words, it must have a "sufficiently direct and immediate" impact on the aggrieved party and a "direct effect on [its] day-to-day business." *Abbott Labs. v. Gardner*, 387 U.S. 136, 152 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). The Department's decision in this case satisfies both conditions.

First, the Department's denial letter marked the end of its process for deciding whether to reopen Berry's claim. It came after plenary review of the existing administrative record, in light of the new evidence purportedly establishing Berry's entitlement to benefits. The decision itself was not "informal" or "tentative." *Id.* at 151. It "definitive[ly]" denied Berry's request: "[T]he request to vacate the September 2, 2004 [final decision] is denied"—period, full stop. *See Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 193 (1985) (requiring that the agency arrive at "a definitive position on the issue").[1] There was no opportunity for further administrative review of the request. *See* 20 C.F.R. § 30.320(c) ("[N]either the district office nor the FAB can consider any objection concerning the Director's decision to reopen a

---

[1]Plaintiff argues that this court cannot rely on the October 29, 2014, letter because the Department failed to authenticate it. The argument is not well taken. The Department filed a sworn declaration by the Director of the compensation program stating that she "reviewed the case record for [Berry's] claim" and found that "[o]n October 29, 2014, the District Director for the Jacksonville district office denied [Berry's reopening] request, finding that the evidence submitted with the request had already been considered by [the] FAB in its final decision . . . ." After discovering that it inadvertently attached the wrong decision to the declaration, the Department attached the October 29th decision to its reply brief in support of its motion to dismiss. The document is consistent with the Director's description, and plaintiff does not give us any reason to question its authenticity.

claim under this section."). Although the Department may reopen Berry's claim at a later date, either on its own initiative or in response to another request, "[t]hat possibility . . . is a common characteristic of agency action, and does not make an otherwise definitive decision nonfinal." *Hawkes Co.*, 136 S. Ct. at 1814.

Second, the DOL's decision had a "sufficiently direct and immediate" impact on Berry. *Abbott Labs.*, 387 U.S. at 152. The decision caused "legal consequences" for Berry, as it determined his ineligibility for compensation despite new evidence purportedly establishing his father's employment history. *Bennett*, 520 U.S. at 178. In the realm of government benefits, where the sole purpose of the administrative proceedings is to determine an individual's entitlement to benefits, the decision not to reopen a claim, despite being presented with new evidence of entitlement, is a significant and "concrete injury" to the claimant, distinct from initial denial of benefits based on different evidence. *Hamilton Bank*, 473 U.S. at 193.

The Department contends that the "final agency action" in this case was the initial 2004 decision denying Berry's claim for benefits, the implication being that there can only be one "final agency action" in a particular administrative proceeding. Although this argument might have some force as applied to intermediate agency decisions, it does not hold true in the reopening context. The underlying rationale of the Supreme Court's "pragmatic" approach to finality is to prevent unnecessary judicial intervention into agency proceedings. *Abbott Labs.*, 387 U.S. at 149–52; *Ciba-Geigy Corp. v. E.P.A.*, 801 F.2d 430, 436 (D.C. Cir. 1986) (stating that judicial review of interlocutory challenges to tentative decisions would "improperly intrude[] into the agency's decisionmaking process" and "squander[] judicial resources since the challenging party still enjoys an opportunity to convince the agency to change its mind"). The concerns animating the finality analysis are simply not present in the reopening context. The Department's initial determination that a claimant is ineligible for compensation is no longer at issue. *See I.C.C. v. Bhd. of Locomotive Eng'rs*, 482 U.S. 270, 278 (1987) ("[W]hat is reviewable is merely the lawfulness of the refusal."). Instead, judicial review is limited to a discrete, after-the-fact decision by the agency whether its initial decision should remain in place in light of new evidence. In that context, there is no concern about interlocutory intrusion, piecemeal review, or the prospect of an agency change-of-heart. Nor would it encourage "repetitive or belated

litigation of stale eligibility claim," as the Department contends. Because judicial review is limited to the lawfulness of the refusal itself, a claimant cannot perpetually litigate the merits of the agency's initial determination under the guise of requests to reopen.

For these reasons, we hold that the Department's refusal to reopen an EEOICPA Part B claim constitutes "final agency action" under the APA.

B.

A "final agency action" is presumptively reviewable under the APA. *Sackett v. E.P.A.*, 132 S. Ct. 1367, 1373 (2012). That presumption may be overcome if, among other things, the decision is "committed to agency discretion by law." *See* 5 U.S.C. § 701(a)(2). The phrase "committed to agency discretion by law" is a term of art in administrative law, representing "a very narrow exception" to judicial review for two particular types of discretionary agency action. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977) (discussing the legislative history of § 701(a)(2)). One of those is actions in which "a court would have no meaningful standard against which to judge the agency's exercise of discretion," and thus there is "no law to apply." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985) (internal quotation marks omitted).

Contending that the refusal to reopen a Part B claim is this kind of discretionary decision, the Department argues that "the traditional rule of administrative law, as recognized by the Supreme Court, [is] that 'an agency's refusal to reopen a closed case is generally "committed to agency discretion by law" and therefore exempt from judicial review.'" Appellee Br. at 17, quoting *Your Home Visiting Nurse Servs., Inc. v. Shalala*, 525 U.S. 449, 455 (1999). Our review of the law indicates that the traditional rule is more nuanced than the Department submits.

1.

The leading case on the reviewability of reopening decisions is *Interstate Commerce Commission v. Brotherhood of Locomotive Engineers*, 482 U.S. 270 (1987) ("*BLE*"). In *BLE*, several railroad companies sought approval for a corporate merger and acquisition of track rights. *Id.* at 273. The ICC approved the application, and its decision was affirmed on judicial

review.  *Id.* at 274.  Soon after, the Brotherhood of Locomotive Engineers (a union of railroad workers involved in the administrative proceedings) petitioned the ICC to reconsider its decision, arguing that it made an error in its initial approval.  *Id.* at 276.  The ICC denied the petition, and the Brotherhood sought judicial review of the denial.  *Id.*

On appeal, the Supreme Court held that the reopening decision was "unreviewable."  *Id.* at 277.  Surveying its decisions, the Court observed that "all of our cases entertaining review of a refusal to reopen appear to have involved petitions alleging 'new evidence' or 'changed circumstances' that rendered the agency's original order inappropriate."  *Id.* at 278 (citing *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 295 (1974) (citing cases), and *ICC v. Jersey City*, 322 U.S. 503, 514–18 (1944) (citing cases)).  None of its previous cases, the Court noted, "reviewed the denial of a petition to reopen based upon no more than 'material error' in the original agency decision."  *Id.* at 278–79.  The Court explained the rationale behind this traditional distinction:

> If review of denial to reopen for new evidence or changed circumstances is unavailable, the petitioner will have been deprived of all opportunity for judicial consideration-even on a "clearest abuse of discretion" basis-of facts which, through no fault of his own, the original proceeding did not contain.  By contrast, where no new data but only "material error" has been put forward as the basis for reopening, an appeal places before the courts precisely the same substance that could have been brought there by appeal from the original order-but asks them to review it on the strange, one-step-removed basis of whether the agency decision is not only unlawful, but *so* unlawful that the refusal to reconsider it is an abuse of discretion.

*Id.* at 279.  Consequently, the Court concluded that "where a party petitions an agency for reconsideration on the ground of 'material error,' *i.e.,* on the same record that was before the agency when it rendered its original decision, an order which merely denies rehearing of the prior order is not itself reviewable."  *Id.* at 280 (internal quotation marks and alteration omitted).

As support for its holding, the Court cited § 701(a)(2)—the provision precluding judicial review of decisions "committed to agency discretion by law."  *See id.* at 282.  The Court explained that § 701(a)(2) captures "the type of agency decision [that] 'has traditionally been committed to agency discretion.'"  *Id.* (quoting *Chaney*, 470 U.S. at 832).  The Court held that a "tradition of nonreviewability exists with regard to refusals to reconsider for material error, by

agencies as by lower courts"—a tradition that § 701(a)(2) "was meant to preserve." *Id.* This tradition prompted the Court to hold:

> *If the petition that was denied sought reopening on the basis of new evidence or changed circumstances review is available and abuse of discretion is the standard*; otherwise, the agency's refusal to go back over ploughed ground is nonreviewable.

*Id.* at 284 (emphasis added).

On the issue of judicial review, *BLE* draws a bright line between requests to reopen based on new evidence and those based on material error. Whereas the latter are "committed to agency discretion by law" under § 701(a)(2) because a "tradition of nonreviewability" exists for that kind of decision, not so for requests to reopen based on new evidence. *Compare id.* at 284, *with id.* at 277. As a result, requests based on new evidence do not fall within § 701(a)(2) and are instead reviewable for an abuse of discretion. *Id.* at 284.

Nothing in *BLE*'s rationale indicates that its holding was limited to ICC proceedings. *See BLE*, 482 U.S. at 280 (citing favorably decisions involving other agencies). Although this court has not had occasion to apply *BLE*'s holding in a published decision, other circuits have done so in a variety of administrative contexts. For instance, in *Sendra Corp. v. Magaw*, a case involving the Bureau of Alcohol, Tobacco, Firearms, and Explosives, the D.C. Circuit summarized *BLE*'s holding in universal terms: "An agency's denial of a petition . . . for reconsideration is not itself subject to judicial review if the petition alleges only 'material error' in the agency's original decision. . . . On the other hand, if an agency denies a petition for reconsideration alleging 'new evidence' or 'changed circumstances,' the agency's denial is reviewable as a final agency action . . . ." 111 F.3d 162, 166 (D.C. Cir. 1997); *see also Schoenbohm v. F.C.C.*, 204 F.3d 243, 245 (D.C. Cir. 2000), *as amended* (June 28, 2000) ("Denial of a petition for reconsideration . . . is generally nonreviewable unless the request for reconsideration was based on new evidence or changed circumstances."); *Vill. of Barrington, Ill. v. Surface Transp. Bd.*, 758 F.3d 326, 328–29 (D.C. Cir. 2014) (reviewing for an abuse of discretion the decision to deny reopening based on new evidence but denying review insofar as petitioner alleged material error).

Following the distinction drawn in *BLE*, we hold that requests to reopen EEOICPA Part B claims based on new evidence are subject to judicial review under the APA; those based solely on a material error in the original decision are not.

2.

The Department's counterarguments are unavailing.

As for its recitation of the governing rule, the Department relied on the Supreme Court's decision in *Your Home Visiting Nurse Services, Inc. v. Shalala*, in which the Court stated that "an agency's refusal to reopen a closed case is generally 'committed to agency discretion by law' and therefore exempt from judicial review." 525 U.S. at 455. This passage, however, must be read in context. In support of that proposition, *Your Home* cited *BLE*, which distinguished between reopening requests based on "material error" (unreviewable) and those based on "new evidence or changed circumstances" (reviewable). *See id.* (citing *BLE*, 482 U.S. at 282); *see also Lincoln v. Vigil*, 508 U.S. 182, 191 (1993) ("[I]n [*BLE*], we held that § 701(a)(2) precludes judicial review of another type of administrative decision traditionally left to agency discretion, an agency's refusal to grant reconsideration of an action *because of material error.*" (emphasis added)). Indeed, *Your Home* went on to explain that "[t]he present case . . . involves evidence that was already before the [agency] at the time of its decision." 525 U.S. at 457. Thus, the Court held, "[t]he holding of [*BLE*] that the decision whether to reopen, *at least where no new evidence is at issue*, is committed to agency discretion by law within the meaning of the [APA], and hence unreviewable, is squarely applicable." *Id.* (internal quotation marks and citation omitted; emphasis added). The Department's reading of *Your Home* as establishing a blanket prohibition on judicial review is not consistent with the holding of *Your Home* or the broader body of case law.

The Department also contends that, because the EEOICPA lacks any provision governing the adjudication of reopening requests, the only source of judicially manageable standards is 20 C.F.R. § 30.320. That regulation, the Department argues, only contains standards governing *the claimant* seeking to reopen a claim. *See* 20 C.F.R. § 30.320(b) (stating that "*a claimant*" may seek reopening "provided that *the claimant* also submits new evidence" (emphasis added)). As

far as standards governing *the Department*, 20 C.F.R. § 30.320(c) states that the decision is "solely in the [Department's] discretion." According to the Department, then, the absence of any judicially manageable standards pertaining to the Department makes reopening requests the type of standardless decision "committed to agency discretion."

We disagree. The Department's distinction between subsection (b) and (c) begs the question: who decides whether the "claimant-oriented" standard in § 30.320(b) is met? We think it obvious that it is the Department. *See* 20 C.F.R. § 30.320(b)(1) ("If *the Director* concludes that the evidence submitted or matter identified in support of the claimant's request is material to the claim, *the Director* will reopen the claim . . . ." (emphasis added)). This much is confirmed by the Department's decision in this very case, which states, "In consideration of the request to reopen, it is determined that you have not submitted evidence that is new and/or compelling to the outcome of the claim. Therefore, I find that the request to reopen does not contain the requisite evidence to warrant reopening of the claim . . . ." This argument also misses the forest for the trees. Looking outside the EEOICPA context, courts are well-accustomed to reviewing decisions to reopen based on new evidence. *See, e.g.*, *BLE*, 482 U.S. at 278 (citing cases); *Ohio v. N.R.C.*, 814 F.2d 258, 263 (6th Cir. 1987) (reviewing denial of request to reopen the record by Nuclear Regulatory Commission for "clear showing of abuse of discretion" (quoting *Mobil Oil Corp. v. I.C.C.*, 685 F.2d 624 (D.C. Cir. 1982)). There is no reason to think courts are ill-equipped to evaluate the same type of decision in the EEOICPA context.

## V.

Given *BLE*'s new-evidence v. material-error dichotomy, we are left to determine whether Berry's reopening request is actually based on "new evidence" or whether it simply alleges a "material error" in the original decision. This case comes to us at the motion-to-dismiss stage. Thus, in making this determination, our review is typically limited to the complaint's allegations, which we must construe in the light most favorable to the plaintiff. *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013). However, we may look outside the four corners of the complaint and consider materials attached to a motion to dismiss if they are referred to in the complaint and central to the claim. *See Weiner v. Klais & Co.*, 108 F.3d 86, 89

(6th Cir. 1997). Nor are we constrained to accept "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff claims his reopening request was based on "new evidence," but a review of the complaint and reopening request reveals that Berry alleged a material error in the Department's original 2004 compensation decision. Plaintiff's complaint is rather opaque. Its best attempt at alleging his reopening request was based on new evidence is its allegation that the Department's decisions (referencing both the initial benefits decision and the refusal to reopen) "were arbitrary and capricious because [they] failed to acknowledge that Plaintiff provided sufficient employment verifications." Yet, even this allegation fails to identify the pieces of new evidence that plaintiff presented with his request to reopen. The reopening request—which plaintiff referenced in his complaint, which the Department attached to its motion, and which is central to plaintiff's claim—described the "new evidence" as follows:

> Mr. Leslie Berry was employed by Breiding/Breeding Insulation from October 1952 – December 1952 (attached statement of social security earnings). Breeding Insulation held a contract with Paducah Gaseous Diffusion Plant from July 1952 – October 1953 (attached Paducah Gaseous Diffusion Plant sub-contractor list).

> When Mr. Berry's employment verification was researched by CPWR [the Center for Protection of Worker's Rights] it was found that Breiding Insulation records were destroyed in a fire. Mr. Berry belonged to Cement Masons Local 125 but worked on a permit through the Insulators Local. Because he was not a member of the Insulators Union, records are unavailable (attached CPWR research results).

Berry's request simply provided new insight on the significance of the existing record evidence, arguing that the Department failed to recognize that Leslie worked for a company ("Breiding Insulation," a.k.a. "Breeding Insulation") that performed subcontracting work at the Paducah Plant. The evidence he referenced was, in the Department's words, "duplicate to evidence already reviewed and considered in the final decision of September 2, 2004." Thus, Berry's reopening request was not based on "new evidence," but on a material error in the original decision. Indeed, in describing the nature of his request in his brief on appeal, Berry conceded it was based on a purported error in the initial compensation decision:

The new and corrected information that Berry provided to DOL when he submitted his Request for Reopening Based on New Employment Information was that DOL had been searching for employment records from a company that did not exist and he properly identified the correct company name so that his case could be reopened and the record corrected and his claim properly paid.

He reiterated this position in his reply brief:

[T]he denial [of the petition to reopen was] only made because the information that was included in the reopening request was in the record prior to the FAB. *Berry requested DOL to review the records and recognize DOL's error in that DOL had been searching for Leslie Berry's employer under an incorrectly spelled name and that there [were] sufficient records to determine that Leslie Berry was employed during the relevant period of time working at the PGDP.* The Denial only states that the documents referenced were in the file, not that the Director or anyone else bothered to review DOL's mistake in spelling Leslie Berry's employer's name incorrectly.

(Emphasis added.)  By Berry's own description, this is a classic example of a reopening request based on a material error in the original decision.

Accordingly, we conclude that Berry's request to reopen his claim was based on a purported material error in the Department's original decision.  Under *BLE*, such reopening requests are "committed to agency discretion" and unreviewable under the APA.  The district court therefore properly dismissed plaintiff's complaint.

VI.

We affirm the judgment of the district court.