NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0145n.06

No. 17-1154

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Mar 20, 2018
DEBORAH S. HUNT, Clerk

MARQUETTE COUNTY ROAD COMMISSION, )
)
    Plaintiff-Appellant, )
)
v. )
)
UNITED STATES ENVIRONMENTAL )
PROTECTION AGENCY, et al., )
)
    Defendants-Appellees. )
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN

BEFORE:    BATCHELDER, GRIFFIN, and WHITE, Circuit Judges.

**ALICE M. BATCHELDER, Circuit Judge.** In 2011, Plaintiff-Appellant Marquette County Road Commission ("Road Commission") applied to Michigan's permitting authority—Michigan Department of Environmental Quality ("MDEQ")—for a permit to fill 25 acres of wetlands to construct County Road 595. *See* 33 U.S.C. § 1344. MDEQ wanted to issue the application, but the U.S. Environmental Protection Agency ("EPA")—which the Clean Water Act ("CWA") empowers to oversee state-run permitting programs—objected to various aspects of the proposal. Despite the Road Commission's numerous attempts to revise the permit application over the following months, EPA remained unsatisfied. Eventually, authority to resolve the permit application transferred to the Army Corps of Engineers ("Corps"). 33 U.S.C. § 1344(j); 40 C.F.R. § 233.50(j). Frustrated with the time and expense of the process, the Road Commission declined to continue the permit review process before the Corps and instead

brought claims under the Administrative Procedure Act ("APA") against EPA and the Corps based on EPA's refusal to approve the issuance of the application and the Corps' requirement that the Road Commission re-submit its application materials to continue the process. The district court determined that neither of these agency actions constituted a final agency action. The district court also rejected the Road Commission's alternative arguments that EPA's objections were reviewable, non-final agency action and that completion of the Corps review process would have been futile. The district court dismissed the suit. We agree and AFFIRM.

I.

Section 404 of the CWA regulates the release of dredged and fill matter into waterways, including wetlands. *See* § 33 U.S.C. § 1344. Generally, the Secretary of the Army oversees Section 404 permitting through the Corps. *See id.* However, the CWA also allows states to administer their own Section 404 permitting programs subject to federal approval and oversight by EPA. *See id.* § 1344(g)-(j); 40 C.F.R. §§ 233.16, 233.20, 233.50, 233.52, 233.53. Michigan is one of two states having federal approval to operate its own permitting program.

State-run permitting programs such as Michigan's are subject to rigorous EPA oversight. *See* 33 U.S.C. § 1344(j); 40 C.F.R. § 233.50. For example, states must submit copies of each permit application to EPA and notify EPA of any action that they take with respect to these applications. 33 U.S.C. § 1344(j).[1] If EPA intends to comment on a state's handling of an application, it must notify the state within thirty days and submit comments to the state within ninety days. *Id.* Once EPA notifies a state that it intends to comment on the permit application, a state may not issue a permit until it receives the comments or ninety days pass, whichever

---

[1] EPA also functions as a liaison between the state and other involved federal agencies. EPA must provide copies of each application it receives to the Corps and the Department of the Interior (through the U.S. Fish and Wildlife Service), and is responsible for integrating comments from these other federal agencies into its comments to the state. *Id.* at § 1344(j).

comes first. *Id.* If EPA objects to the state's issuing a permit, a state "shall not issue the permit unless [it] has taken the steps required by [EPA] to eliminate the objection," regardless of how much time has passed. 40 C.F.R. § 233.50(f); *accord* 33 U.S.C. § 1344(j). EPA must provide reasons for objecting to the issuance of a permit "and the conditions which such permit would include if it were issued by [EPA]." 33 U.S.C. § 1344(j); *accord* 40 C.F.R. § 233.50(e).

A state has limited options when it wishes to issue a permit to which EPA objects. It may (i) issue a revised permit that eliminates EPA's objection; (ii) deny the permit; or (iii) request a public hearing. *See* 33 U.S.C. § 1344(j); 40 C.F.R. § 233.50(f)-(g). If the state does not take one of these three actions within ninety days of EPA's objection, authority to make a final decision regarding the permit transfers to the Corps. 33 U.S.C. § 1344(j); 40 C.F.R. § 233.50(j). If the state requests a public hearing, EPA must conduct the hearing and then "reaffirm, modify, or withdraw the objection or requirement for a permit." 40 C.F.R. § 233.50(h). If EPA reaffirms or modifies its objection, the state has essentially the same recourse it had before the hearing: it must within thirty days either issue a revised permit that eliminates EPA's objections or deny the permit. 40 C.F.R. § 233.50(f)-(j). If the state does not take either of these actions, authority to review and make a decision regarding the permit transfers to the Corps. 33 U.S.C. § 1344(j); 40 C.F.R. § 223.50(j).

## II.

The Section 404 permitting process has the potential to be onerous, and proved to be so for the Road Commission. The Road Commission submitted its permit proposal for County Road 595 to MDEQ—the state agency that runs Michigan's program—in October 2011 and a revised proposal in January 2012.[2] On April 23, 2012, after consulting with the Corps and the

---

[2] EPA, the Corps, and the U.S. Fish and Wildlife Service all received copies of the Road Commission's revised permit application, per statutory directives.

U.S. Fish and Wildlife Service, EPA objected to the Road Commission's proposal. EPA's objections asserted that the Road Commission failed to comply with the requirements of the CWA because, among other things, it did not demonstrate that the proposed road was the "least environmentally damaging practical alternative."

Over the next several months the Road Commission revised its proposal numerous times based on conversations between it, MDEQ, and EPA. Despite the Road Commission's attempts to resolve EPA's objections, EPA remained unsatisfied and believed the proposal failed to meet CWA standards. MDEQ, however, thought the most recently revised proposal met CWA standards and wished to grant the Road Commission a permit.

MDEQ requested a public hearing, which EPA held on August 28, 2012. Following the hearing, MDEQ sent a letter to EPA urging EPA to remove its objections so that it could grant the permit. MDEQ contended that "the Road Commission ha[d] been responsive to the concerns expressed in [MDEQ's] and [EPA's] correspondence . . . including the [EPA's] April 23, 2012, objection letter." Since EPA's objection, the letter stated, the Road Commission had expanded its explanation "of the alternatives analysis that demonstrate[s] the proposed route is the least environmentally damaging practicable alternative to achieve the project purpose," "effectively minimized . . . impacts to streams via shorter and wider stream crossings or bridges," "narrowed or removed [the road footprint] across the rare and imperiled wetlands," and "modified [the proposed road route] in several locations to avoid critical wetlands and further reduce overall impacts." MDEQ stated that it believed these improvements adequately addressed EPA's and MDEQ's comments and brought MDEQ "to the point [where] Michigan will soon be in a position to issue a permit." In closing, the letter "urge[d] []EPA to remove their objection to the MDEQ issuing a permit for construction of Marquette County Road 595."

Nearly three months passed before EPA responded to MDEQ's letter. On December 4, 2012, EPA informed MDEQ that it would withdraw its objection that the Road Commission's proposal was not the least harmful alternative, but continued to object to the issuance of a permit because the Road Commission had still not provided "adequate plans to minimize impacts" or a "comprehensive mitigation plan that would sufficiently compensate for unavoidable impacts."

EPA's continued objection triggered the thirty-day deadline for MDEQ to either resolve EPA's objection and grant the permit, or deny the permit. *See* 40 C.F.R. § 233.50(f)-(j). On the eve of the statutory deadline, MDEQ notified EPA that it was working with the Road Commission to address EPA's objections, but "the short time frame allowed by statute and the complexity of the issues remaining" prevented MDEQ from issuing a permit. MDEQ acknowledged that because it did not resolve EPA's objections in time to grant the permit and declined to deny the permit outright, the CWA directed that "authority to process the permit application . . . transferred to the [Corps]." *See* 33 U.S.C. § 1344; 40 C.F.R. §233.50(f)-(j).

Upon assuming authority over review of the permit, the Corps required the Road Commission to re-submit its application to continue the permitting process.[3] The Road Commission declined to re-submit and the permitting process for County Road 595 came to a halt.

---

[3] Both in its briefing and at oral argument, the Road Commission characterized the submission requested by the Corps as a "new application." At oral argument, the Road Commission asserted that the application requested by the Corps would have "a host of factors that were different from what the DEQ looked at," including "different definitional terms" and the fact that the Road Commission "was going to have to comply with [the National Environmental Policy Act,]" which counsel described as a "significant difference from the application process it had gone through with the DEQ." EPA and the Corps contest this characterization, asserting in briefing and at oral argument that the Corps required the Road Commission to re-submit its application in order to ensure that the Corps considered the proper and most-recent materials given the various revisions to the Road Commission's permit application. Counsel for EPA and the Corps further asserted that the substantive criteria to be considered by the Corps are identical to the criteria considered by MDEQ and the EPA because all the inquiries concern the requirements of § 404. We need not resolve this dispute.

The Road Commission initiated the instant litigation, filing a five-count declaratory judgment action in the United States District Court for the Western District of Michigan against the EPA (counts one through four) and the Corps (count five). The complaint alleged that: EPA's objections to the Road Commission's permit application were arbitrary and capricious (count one); EPA exceeded its delegated authority by issuing objections based on requirements that are not mandated by the CWA (count two); EPA's objections failed to list the conditions necessary for a permit to issue, as required by Section 404(j) of the CWA (count three); EPA did not follow the procedural requirements of Section 404(j) of the CWA (count four); and the Corps' improperly denied the permit application by failing to act on it (count five). For relief against EPA, the Road Commission requested that the court declare EPA's objections unlawful and restore permitting authority to the MDEQ. Against the Corps, the Road Commission requested that the court declare that the Corps' failure to take action constituted constructive denial and direct the Corps to grant a permit.

EPA and the Corps moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The district court granted the motion and dismissed the complaint in full. For the following reasons we affirm.

III.

A.

"[C]hallenge[s] to the availability of judicial review under the APA [are] properly analyzed under Federal Rule of Civil Procedure 12(b)(6) and whether [a] plaintiff has stated a valid claim for relief." *Berry v. U.S. Dep't of Labor*, 832 F.3d 627, 632 (6th Cir. 2016) (citing *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490, 494 n.4 & 495 (6th Cir. 2014)). We review de

novo questions of statutory interpretation and a district court's order dismissing a complaint for failure to state a claim. *Id.*

"[A]gency action," as defined by the APA, "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). Agency action is subject to judicial review when "made reviewable by statute" or—relevant here—when it is "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *see Berry*, 832 F.3d at 632. To be considered "final" under the APA an agency action must generally meet two conditions. *Berry*, 832 F.3d at 633 (citing *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016)). "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Hawkes Co.*, 136 S. Ct. at 1813 (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)); *see Berry*, 832 F.3d at 633.

In this appeal, the Road Commission asserts that EPA's objections constituted final, reviewable agency action. As to the first prong of the analysis—the consummation of the agency's decisionmaking process—the Road Commission asserts that EPA's objections served as a "veto" that completed EPA's involvement and denied a permit that MDEQ otherwise would have granted. This, however, is belied by the record and the statute.

Though the Road Commission characterizes EPA's objections as a "veto," the facts show that EPA's objections did not end the Road Commission's pursuit of a Section 404 permit. To the contrary, when EPA lodged objections, the permit review process continued precisely as directed by statute. The Road Commission repeatedly revised its permit application in its

attempt to eliminate EPA's objections. Eventually, MDEQ, disagreeing with EPA's assessment that the Road Commission's permit application failed to meet CWA standards, requested a public hearing. EPA held the hearing, after which it withdrew some objections and renewed others. MDEQ, finding itself unable to issue a permit that resolved EPA's remaining objections and unwilling to deny the permit outright, ceded review authority to the Corps. Only when the Road Commission, tired of the rigmarole the CWA imposes, declined to submit its most recent materials to the Corps did the Road Commission itself discontinue the permitting process.[4] As EPA conceded in briefing, "[h]ad MDEQ denied the permit or issued a permit with conditions resolving EPA's objection, the permitting process would have been at an end, and the Road Commission could then have sought review if it was dissatisfied with the result." In the absence of any decision from either agency to ultimately deny or grant the permit, however, we have nothing to review. *See Friends of Crystal River v. EPA*, 35 F.3d 1073, 1079 n.11 (6th Cir. 1994) (EPA objections to Section 404 permits are unreviewable because they are not final); *cf. Sackett v. EPA*, 566 U.S. 120, 127 (2012) (compliance order's findings and conclusions were final, because they were not subject to further review).[5]

Nor does the Road Commission's artificial attempt to divide the Section 404 permit process into two separate "permits"—a "state permit" and a "Corps permit"—show the consummation of a decisionmaking process. The CWA establishes one continuous application process to obtain a Section 404 permit, of which state-run permitting programs are one part. *See* 33 U.S.C. § 1344. The shift of review authority from MDEQ to the Corps is a midpoint, not a

---

[4] We sympathize with the Road Commission's frustration with the long, expensive, burdensome process it has endured. Unfortunately, it is the process the CWA requires, and one which must be fully completed before APA review can be triggered.

[5] As counsel for EPA and the Corps noted at oral argument, the Road Commission could to this day continue to pursue a Section 404 permit for County Road 595 by submitting its most recent revised application to the Corps.

new, separate, and distinct application process. *See id.* Here, the Section 404 permit process could have been consummated with a grant or denial by MDEQ, subject to EPA approval, or a grant or denial by the Corps. These two potential decision points do not equal two separately reviewable permit processes. And though the Road Commission has unquestionably endured a long, expensive, and frustrating permit application process, it voluntarily discontinued the process and did not receive any final determination.[6]

Finally, the Road Commission argues that because the Corps is a separate agency from EPA, the close of the MDEQ review and transfer of the application to the Corps fulfills the first prong of finality review because it marks the consummation of *EPA's* agency action. But EPA and the Corps are, by statute, charged to work together to assess permits throughout the review process. The Road Commission's parsing of "agency action" to mean each individual agency's actions is inconsistent with prior court precedent. *See Jama*, 760 F.3d at 496 ("Congress has delegated to specific government agencies the task of enforcing immigration laws and determining aliens' immigration statuses. *The agencies' decisionmaking process consummates when they issue a final decision* regarding the alien's immigration status." (emphasis added)). And even if this were not the case, EPA's involvement in the Section 404 permitting process does not end when review transfers to the Corps. *See* 33 U.S.C. § 1344(c); *see, e.g.*, *Mingo Logan Coal Co. v. EPA*, 829 F.3d 710, 714-15, 717-18 (D.C. Cir. 2016); *cf. Michigan Peat v. EPA*, 175 F.3d 422, 428 (6th Cir. 1999) (finding final agency action where "[s]tatutorily, there was nothing left for the EPA to do once it signed off on the proposed permit").

---

[6] Though the Corps did request that the Road Commission submit a "new" application to continue the review process, counsel for EPA and the Corps asserted that this request was merely to ensure continued review of the most up-to-date permit application. The Road Commission's decision not to submit its most up-to-date materials to the Corps for continued review ended a long, but ultimately incomplete, Section 404 permit review process.

Because the Road Commission has failed to demonstrate that EPA's objections or the transfer of authority over the permit to the Corps consummated the decisionmaking process in the Section 404 permit proceeding, we need not analyze whether legal consequences flowed. The Road Commission has failed to show that the challenged actions constitute final agency action permitting this court's review under the APA.

B.

The Road Commission contends in the alternative that, even if EPA's objections are not final agency action under the APA, it is nonetheless entitled to judicial review of the merits of those objections under an exception established in *Leedom v. Kyne*, 358 U.S. 184 (1958). *Leedom* is a "narrow anomaly reserved for extreme situations," where agency conduct constitutes a patent violation of its delegated authority. *Shawnee Coal Co. v. Andrus*, 661 F.2d 1083, 1093 (6th Cir. 1981); *see also Friends of Crystal River*, 35 F.3d at 1079 n.13 (6th Cir. 1994). EPA's objections simply cannot be characterized as a patent violation of its authority, where the CWA explicitly allows EPA to object to a permit application "as being outside the requirements of this section [of the CWA], including, but not limited to, the [Section 404] guidelines developed under subsection (b)(1)." 33 U.S.C. § 1344(j). The Road Commission's attempt to paint the "outside the requirements" language of Section 404 as creating a narrow power to object only to certain matters, while leaving the rest to the state's discretion, is not supported by statutory or regulatory language. *See, e.g.*, 40 C.F.R. § 233.50(e) (permitting EPA objections based on "the Regional Administrator's determination that the proposed permit is . . . outside [the] requirements of the Act, these regulations, or the 404(b)(1) Guidelines.").

For *Leedom* to apply there must also be a showing that the aggrieved party would be "wholly deprived" of its statutory rights. *Detroit Newspaper Agency v. NLRB*, 286 F.3d 391, 397

(6th Cir. 2002). The Road Commission cannot make this showing, because it could simply continue the permit process before the Corps and eventually receive a final decision that is judicially reviewable.

### C.

The Road Commission also argues in the alternative that it would have been futile for it to have continued the permit process before the Corps because the Corps had made up its mind and would reject any application from the Road Commission. To support this argument, the Road Commission relies on comments that the Corps made to the first revised application in March 2012, where the Corps questioned the stated purpose of the project and identified other deficiencies in the Road Commission's proposal. The Road Commission also refers to an email from an EPA employee to the Corps, in which the EPA employee stated sarcastically that it "looked like 'they' want to go to the [Corps] permit for [County Road] 595, EPA is such a job killer . . . hope the [Corps] is more reasonable."

There is nothing to suggest that the Corps' prior comments on an earlier draft of the Road Commission's application meant that the Corps would never grant the permit or that the Road Commission could not resolve the issues prompting those comments. And even if the Road Commission's interpretation of a snide email from an EPA employee to a Corps employee is accurate, the email is not sufficient to show that the Corps had predetermined that it would never grant the Road Commission a permit.

### IV.

For the foregoing reasons, we AFFIRM the judgment of the district court.